05-1696-CBS

**AFFIDAVIT**

I, Jody Minick, being duly sworn, do depose and state as follows:

1. I am a Special Agent ("S/A") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been so employed for the past two years. I have attended the fourteen-week New Agents Professional Training program at the ATF Academy in Brunswick, Georgia. I have also attended the ten-week Criminal Investigator Training Program sponsored by the Federal Law Enforcement Training Center. Currently, I am assigned to a group in the Boston Field Office of ATF that, in part, works with other federal, state, and local police departments in the Commonwealth of Massachusetts to investigate and prosecute violations of federal firearms and explosives laws. As a result of my participation in these investigations and the training I have received as an ATF Special Agent, I am familiar with federal laws, including 18 U.S.C. §922(a)(3), which makes it unlawful for a person without a federal firearms license to obtain a firearm outside his state of residence and thereafter transport or receive the firearm in his state of residence. I am also familiar with 18 U.S.C. §2, the aiding and abetting statute, which makes it unlawful for any person to aid, abet, counsel, command, induce or procure the commission of an offense against the United States.

2. I submit this affidavit in support of a criminal

complaint against DANIELLE VANESSA PAPPARGERIS ("Pappargeris"), charging her with aiding and abetting Claude E. Seraphin, a/k/a J.C. ("Seraphin"), in his violation of 18 U.S.C. §922(a)(3). As set forth below, this affidavit is based on my personal knowledge, observations and beliefs, information provided by independent sources, my training and experience, and the experience, observations and reports of other law enforcement officials assigned to this investigation. In submitting this affidavit, however, I have not included each and every fact known to me about the investigation, but only those facts that I believe are sufficient to establish the requisite probable cause.

3.  Seraphin (DOB: 9/20/78), is believed to reside at 28 Sedalia Road, Burlington, MA. He is a convicted felon who cannot lawfully purchase or possess firearms and/or ammunition that have traveled across state lines. I have had ATF's Federal Licensee System checked, and Seraphin is not a federal firearms licensee.

4.  On May 20, 2005, while conducting a search of a vehicle during the execution of a search warrant unrelated to Pappargeris and Seraphin, the Cambridge Police Department found a Firearms International Corp. .380 caliber model D pistol, serial number CPA039366. A trace on the ownership of this gun conducted through the national ATF tracing center revealed that the pistol was purchased less than six weeks earlier, on April 11, 2005, at the Kittery Trading Post, a federally licensed firearms dealer

("FFL") in Kittery, Maine. A review of records required under federal laws to be maintained by Kittery Trading Post, specifically an ATF Form 4473 that documents each firearm sale by a FFL, established the purchaser of the recovered firearm to be Pappargeris, of Portsmouth, NH. The recovered pistol was one of three guns purchased by Pappargeris at that time. The other two guns were a Walther P22 .22 caliber pistol, serial number L069287, and a Bersa .380 caliber, model 383 pistol, serial number 127891. The three firearms were purchased for a total of $551.64, which was paid in cash. I later obtained a copy of an in-store surveillance video taken by the Kittery Trading Post on April 11, 2005. The video shows Pappargeris, who I know by sight, purchasing the three firearms. The video also showed that Pappargeris was in the store with a black male with dreadlocks pulled back in a ponytail. ATF agents also learned from employees at Kittery Trading Post that Pappargeris had also sold a Mossberg model 702 .22 caliber rifle, serial number EDJ159131 for a $90 store credit on April 3, 2005, and bought a CZ model 70 .32 caliber pistol, serial number 640638 for $135 on April 4, 2005. I have reviewed records of the Kittery Trading Post that document both the purchase from Pappargeris on April 3, 2005, and the sale to her the following day.

5. Further investigation revealed that Pappargeris had also purchased two more guns from Costa Arms, a FFL, in Kingston,

NH, on April 8, 2005. I have reviewed the ATF Form 4473 that documents that sale to Pappargeris, and it shows that on that date she purchased a Taurus .38 caliber revolver, serial number RK702408 and a Keltec model P11, 9mm pistol, serial number A1W23.

6. On May 25, 2005, ATF S/A Meade and I interviewed Pappargeris at the Portsmouth Police Department. At the beginning of the interview we identified ourselves, stated that she was not under arrest, and that she could leave at any time. We questioned Pappargeris about the firearms purchases discussed above. Her response to us did not match the information we already had concerning the firearms purchases. We emphasized the fact that it was important that Pappargeris tell the truth about the firearms. Pappargeris then stated that what she said earlier was not the truth, but that she now wanted to tell us the truth concerning the firearm purchases.

7. Pappargeris then stated that in early March 2005, she met a black male known to her as J.C. J.C. was approximately 26 years old and wore his hair in dreadlocks. They met at a club called Banana's in Portsmouth, NH, and immediately started dating. J.C. frequently stayed at Pappargeris's apartment in a housing project in Portsmouth, New Hampshire. Pappargeris told us that she did not know the last name of J.C., but that she would be able to identify him.

8. Pappargeris reported that approximately one month after

4

they started dating, she and J.C. went to a Wal-Mart, where J.C. pointed out firearm that he liked. A couple days later J.C. asked Pappargeris to go back to the Wal-Mart with him and purchase the firearm for him. Pappargeris took J.C. to Wal-Mart, filled out the paperwork, and paid for a rifle with her own money. The rifle was then locked and placed by them under Pappargeris's bed at her apartment. Thereafter, Pappargeris reported that J.C. left her apartment and went to Massachusetts, where she knows he resides, for a couple of days. She did not know J.C.'s address, but had been to his home once before, and thought she could locate it again.

9. Pappargeris stated that while J.C. was in Massachusetts, she became nervous about the rifle in her apartment because of her young son. On April 3, 2005, Pappargeris took the rifle she had bought for J.C. at Wal-Mart to the Kittery Trading Post and sold it for a $90 store credit. I have reviewed records of the Kittery Trading Post that show that on April 3, 2005, Pappargeris sold to the store a Mossberg 702, .22 caliber rifle in exchange for a $90 store credit. I have also reviewed an ATF Form 4473 that documents the March 31, 2005 purchase by Pappargeris of the same Mossberg rifle at Wal-Mart, in Portsmouth, NH.

10. When J.C. thereafter returned to Pappargeris's apartment, she told J.C. she sold the pistol to the Kittery

Trading Post. J.C. told her that she should not have sold it back, because he was going to take her to a range to shoot it. On April 4, 2005, J.C. asked Pappargeris to take him to Kittery Trading Post to get him a new gun. Pappargeris stated that in the parking lot of the Kittery Trading Post J.C. handed her approximately $30 cash to purchase a gun. Pappargeris and J.C. both went into Kittery Trading Post, and J.C. picked out a pistol. Pappargeris used her store credit, J.C.'s $30, and some of her own money to purchase the firearm, but could not remember how much of her own money she used. I have reviewed an ATF Form 4473 from the Kittery Trading Post that documents the purchase by Pappargeris on April 4, 2005 of a CZ model 70 .32 cal pistol, serial number 640638. I have also recently learned that this firearm was recovered by the Boston Police Department in Boston from an individual who was arrested on May 17, 2005.

11. Pappargeris further stated that on April 8, 2005, she and J.C. went, at J.C.'s suggestion, to Costa Arms, a FFL in Kingston, NH. J.C. and Pappargeris both went into the gun store and J.C. picked out two handguns. Pappargeris stated that she filled out the paperwork and paid for the guns with J.C.'s money. The guns were then brought back to her apartment and placed under her bed. I have reviewed an ATF Form 4473 that documents the purchase by Pappargeris at Costa Arms on April 8, 2005, of two firearms, a Taurus .38 caliber revolver, serial number RK702408,

and a Keltec model P11, 9mm pistol, serial number A1W23.

12.  Shortly thereafter, J.C. went to Massachusetts for a few days.  Pappargeris said that J.C. took all of the guns they had purchased (one from Kittery Trading Post, and two from Costa Arms) with him when he left.

13.  On April 11, 2005, J.C. returned to Pappargeris's apartment.  She stated that she took J.C. to Kittery Trading Post that day where she purchased three more firearms for J.C.  Pappargeris acknowledged that she filled out the paperwork for the purchase and stated that J.C. paid for the guns by giving her the money to pay for them.  Pappargeris stated that she drove to Massachusetts with the guns and J.C. (and a friend of J.C.'s) the same day the three handguns were purchased at the Kittery Trading Post.  She further stated that she dropped off J.C., with the guns (and his friend), near Tufts University.

14.  Pappargeris stated that she has not seen J.C. since April 11, 2005.

15.  Pappargeris stated that she once went to J.C.'s house and remembered it was near the Burlington Mall, in Burlington, Massachusetts.  She also remembered picking up J.C. and a friend of his near Tufts University.

16.  We then showed Pappargeris the video of her purchasing firearms at Kittery Trading Post on April 11, 2005, and she identified the black male in the video as the person she knew as

J.C. and for whom she purchased the firearms at Wal-Mart, the Kittery Trading Post, and Costa Arms.

17. Pappargeris stated that she would cooperate with agents and provide any information she could regarding these firearms transactions, including pointing out where J.C. lived.

18. On Friday May 27, 2005, S/A Meade and I met with Pappargeris at the Burlington Mall in Burlington, MA. Previous to this meeting we had contacted local police departments and used Internet databases in an attempt to identify J.C. We showed Pappargeris several photographs and asked if she recognized any of the persons depicted. She identified a photograph of Seraphin as the person she knew as J.C.

19. We then drove Pappargeris, based on her directions, to 28 Sedalia Road, Burlington, Massachusetts, where she believed that J.C. lived. This address matches the address on Seraphin's license information from the Massachusetts Registry of Motor Vehicles.

20. Later, J.C., in a recorded conversation with Pappargeris, gave her a cell phone number that he claimed was his brother's, (781) 922-1377. Records from Nextel show that phone number (781) 922-1377 is subscribed to by Claude Seraphin at 28 Sedalia Road, Burlington, MA.

21. Based on the above, I believe there is probable cause to conclude that on April 11, 2005, in the District of

Massachusetts, DANIELLE VANESSA PAPPARGERIS, did aid and abet CLAUDE E. SERAPHIN, a/k/a J.C., who, not being a licensed importer, manufacturer, dealer, or collector of firearms, did transport into the state of Massachusetts, the state in which he resides, three firearms purchased and obtained by him outside of Massachusetts, in violation of 18 U.S.C. §§922(a)(3) and 2.

_____
Jody Minick, Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Subscribed and sworn to before me this 19th day of July, 2005.

_____
CHARLES B. SWARTWOOD, III
Chief U.S. Magistrate Judge

9

JS 45 (5/97) - (Revised USAO MA 6/29/04)

| Criminal Case Cover Sheet | U.S. District Court - District of Massachusetts |

Place of Offense: Somerville    Category No. II    Investigating Agency ATF

City Somerville    Related Case Information:

County Middlesex    Superseding Ind./ Inf. _____  Case No. _____
Same Defendant _____  New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name DANIELLE VANESSA PAPPARGERIS    Juvenile  ☐ Yes  ☒ No

Alias Name _____

Address 118 Ledgewood Manor, #4, Portsmouth, NH 03801

Birth date (Year only): 1976  SSN (last 4 #): ____  Sex M  Race: ____  Nationality: ____

**Defense Counsel if known:** _____    Address: _____

**Bar Number:** _____

**U.S. Attorney Information:**

AUSA Timothy Q. Feeley    Bar Number if applicable 160950

Interpreter: ☐ Yes ☒ No    List language and/or dialect: N/A

Matter to be SEALED: ☐ Yes ☒ No

☒ Warrant Requested    ☐ Regular Process    ☐ In Custody

**Location Status:**

Arrest Date: _____

☐ Already in Federal Custody as _____ in _____.
☐ Already in State Custody _____  ☐ Serving Sentence  ☐ Awaiting Trial
☐ On Pretrial Release: Ordered by _____ on _____

Charging Document:  ☒ Complaint  ☐ Information  ☐ Indictment

Total # of Counts:  ☐ Petty ____  ☐ Misdemeanor ____  ☒ Felony 1

Continue on Page 2 for Entry of U.S.C. Citations

☒  I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date: July 19, 2005    Signature of AUSA: *Timothy Feeley*

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant**     DANIELLE VANESSA PAPPARGERIS

### U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  18 U.S.C. §922(a)(3) | Unlawful transportation of firearms | 1 |
| Set 2 | | |
| Set 3 | | |
| Set 4 | | |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

**ADDITIONAL INFORMATION:**